UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CLARENCE RAY ALLEN,

        Petitioner,

    v.

STEVEN ORNOSKI, Warden of the California State Prison at San Quentin, and THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

        Respondents.

NO. CIV. S-06-64 FCD/DAD

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This morning, petitioner Clarence Ray Allen filed a petition for writ of habeas seeking relief from his sentence of death under 28 U.S.C. § 2254 and a motion for a stay of his January 17, 2006 execution date.[1] This is petitioner's second proceeding in

---

[1] In a December 23, 2005 habeas corpus petition, petitioner raised these claims before the California Supreme Court. At 12:30 p.m. on January 10, 2006, that court denied the petition in a one-sentence order: "Petitioner's third petition for a writ of habeas corpus and request for stay of execution, filed December 23, 2005, is denied on the merits." <u>In re Clarence Ray Allen</u>, No. S139857 (Cal. Supreme Ct.).

1

this court. In 1988, petitioner filed a petition for a writ of habeas corpus. <u>Allen v. Calderon</u>, CIV S 88-1123 F.D. JFM (E.D. Cal.). After exhaustion of his state remedies, amendment of the petition, and an evidentiary hearing, on March 9, 1999 Magistrate Judge Moulds recommended denial of the amended petition. By order dated May 11, 2001, the undersigned adopted those findings and recommendations, denied the amended petition, and dismissed the case. The Court of Appeals affirmed. <u>Allen v. Woodford</u>, 395 F.3d 979 (9th Cir.), <u>cert. denied</u>, 126 S. Ct. 134 (2005). Petitioner concedes that he did not raise in his prior petition the Eighth Amendment claims now raised in the pending petition. Early this afternoon, the state filed a response.[2]

The facts underlying petitioner's conviction and sentence were set out in the March 1999 Findings and Recommendations. They need not be repeated here.

Petitioner presents two distinct claims. First, because he is elderly and "woefully infirm," petitioner argues his execution would violate the Eighth Amendment. He describes "evolving standards of decency" based on state laws and practices and "international norms" which demonstrate that his execution would constitute cruel and unusual punishment banned by the Eighth Amendment. Given his poor health, his argument continues, his execution would serve neither the retributive nor the deterrent purposes of the death penalty. The essence of this claim is petitioner's physical condition. Second, petitioner argues that

---

[2] Due to the extreme exigencies of time and the adequacy of the prior briefing, the court finds a reply brief and oral argument unnecessary.

executing him after his extended tenure on death row, now more than 23 years, along with the "horrific" conditions of his confinement, would also violate his Eighth Amendment rights.

## I.

Because this is not petitioner's first proceeding in this court, the initial issue is whether he must seek permission from the Court of Appeals to file his current petition. For a "second or successive" ("SOS") petition, 28 U.S.C. section 2244 provides the following "gatekeeping" requirements:

> (b)(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

The court of appeals may authorize a filing where "the application makes a prima facie showing that the application satisfies the requirements of this subsection." Subsection (b)(3)(C). Those requirements of subsection (b) include the following:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

3

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner argues his application is filed properly in this court because it is not a "second or successive habeas corpus application" within the meaning of section 2244. The statute does not define an SOS application. "Courts have uniformly rejected a literal reading of Section 2244, concluding that a numerically second petition does not necessarily constitute a 'second' petition for the purposes of AEDPA." James v. Walsh, 308 F.3d 162, 167 (2nd Cir. 2002)(collecting cases). The standard consistently applied is the abuse of the writ standard used prior to the 1996 amendments (the "AEDPA") to the habeas statute. The Court of Appeals for the Ninth Circuit has applied this abuse of the writ standard: "The Supreme Court, the Ninth Circuit, and our sister circuits have interpreted the concept incorporated in this term of art ["second or successive"] as derivative of the 'abuse-of-the-writ' doctrine developed in pre-AEDPA cases." Hill v. Alaska, 297 F.3d 895, 897-98 (9th Cir. 2002). Pre-AEDPA law in this circuit established that an "'abuse-of-the-writ' occurs when a petitioner raises a habeas claim that could have been raised in an earlier petition were it not for inexcusable neglect." Id. at 898 (citing McCleskey v. Zant, 499 U.S. 467, 493 (1991)).

Arguing that his is not an SOS application, petitioner relies primarily on the Supreme Court's decision in Stewart v.

4

Martinez-Villareal, 523 U.S. 637 (1998). There, the Court considered whether a claim that the petitioner was incompetent to be executed, a Ford claim,[3] which the federal court dismissed as premature in a prior petition, was SOS. The Court held it was not, finding that because the district court originally refused to rule on petitioner's Ford claim, the later assertion of the claim did not amount to an SOS application subject to section 2244(b). 523 U.S. at 644-45. The Court pointed out that identifying any assertion of a claim as SOS whenever the petitioner had previously been to federal court would have implications for habeas practice which would be "far reaching and seemingly perverse." Id. at 644. This was true because the Ford claim was not ripe until the petitioner's execution "was imminent." Id. at 644-45. Indeed, as the Court recognized, applying section 2244(b) to Martinez-Villareal's Ford claim would render it unreviewable on the merits by a federal habeas court. Id. at 645. If considered SOS, the claim would have been barred since the claim did not rely on new law and was not an assertion of innocence of the underlying crime. 28 U.S.C. § 2244(b)(2). It is possible this complete denial of federal review would amount to an unconstitutional suspension of the writ. See James, 308 F.3d at 168 (a denial of permission for [the petitioner] to bring the present claim as a first habeas petition might implicate the Suspension Clause, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended,

---

[3] In Ford v. Wainwright, the Court held that the Eighth Amendment prohibits the execution of person who is insane. 477 U.S. 399, 410 (1986).

5

unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2).`

The situation in <u>Martinez-Villareal</u> differs from that presented here in one important respect. Petitioner has not previously raised his current claims in federal court. The Supreme Court specifically declined to address this situation:

> This case does not present the situation where a prisoner raises a Ford claim for the first time in a petition filed after the federal courts have already rejected the prisoner's initial habeas application. Therefore, we have no occasion to decide whether such a filing would be a "second or successive habeas corpus application" within the meaning of AEDPA.

523 U.S. at 645 n.1. However, since <u>Martinez-Villareal</u>, several courts have examined the issue and held that, such a claim not raised previously and not ripe until an execution was imminent, is not an SOS claim subject to section 2244(b). See <u>Singleton v. Norris</u>, 319 F.3d 1018, 1023 (8th Cir. 2003) (involuntary medication of prisoner after execution date set); <u>Coe v. Bell</u>, 209 F.3d 815, 823 (6th Cir. 2000) (<u>Ford</u> claim); <u>Poland v. Stewart</u>, 41 F. Supp. 2d 1037, 1039 (D. Ariz. 1999)(<u>Ford</u> claim). Respondent points to no authority to the contrary.[4]

Petitioner argues that both of his claims fall within the ambit of <u>Martinez-Villareal</u>. He is only partly correct. Petitioner's claim that the standards of decency underlying the Eighth Amendment dictate that a man of his age and condition should be spared is essentially a claim of physical incompetency

---

[4] While the court's independent research has identified some cases suggesting to the contrary, each of those decisions pre-dated <u>Martinez-Villareal</u> and are, therefore, inapplicable.

to be executed. The focus of this claim is petitioner's age and condition at the time his execution date looms.[5] This is not a claim petitioner could have raised in 1991 when he filed his amended petition in his prior proceeding or even in 2001 when this court denied that petition. Like a petitioner's mental competence, petitioner's physical condition is changeable. The fact that he may have been physically infirm in 1991, 1997, or 2001 would not have amounted to a ripe claim that he was too infirm to be executed since his physical condition, like his mental competence, could very well change.

Petitioner's duration of confinement claim is entirely different. The claim arises from Justice Stevens' memorandum respecting the denial of certiorari in Lackey v. Texas, 514 U.S. 1045 (1995). There, Justice Stevens commented upon the importance and novelty of the petitioner's claim that his seventeen years on death row amounted to cruel and unusual punishment in violation of the Eighth Amendment. It is quite clear that in this circuit a Lackey claim falls within the ambit of section 2244(b). Gerlaugh v. Stewart, 167 F.3d 1222, 1223-24 (9th Cir. 1999); Ortiz v. Stewart, 149 F.3d 923, 944 (9th Cir. 1998); Gretzler v. Stewart, 146 F.3d 675, 676 (9th Cir. 1998); Ceja v. Stewart, 134 F.3d 1368, 1369 (9th Cir. 1998).

---

[5] The fact that petitioner includes the length of his confinement as a factor contributing to his physical condition does not turn this into a different claim. Certainly, a claim of incompetence would include a discussion of all the factors, including possibly tenure on death row and treatment in prison, which contributed to the petitioner's mental state. The basis of petitioner's first claim is that his age and physical infirmity render his execution a violation of the Eighth Amendment.

7

Petitioner argues that his is more than just a Lackey claim. That may be true. Petitioner asserts that the conditions of his confinement and his health considered in combination with his twenty-three-year-plus tenure on death row violate the Eighth Amendment. However, those additional arguments do not change the fact that his duration of confinement claim could have been raised years earlier. Certainly, prior to 2001, when the final decision was rendered in petitioner's first habeas case here, petitioner could have raised a claim that his more than fifteen years on death row amounted to an Eighth Amendment violation. The fact that the passage of time has made petitioner's claim stronger is not relevant. The passage of time makes a stronger case in any Lackey claim. Unlike a claim of incompetence to be executed or one involving the involuntary administration of psychotropic medications before execution, this Lackey claim did not first become ripe only when an execution date was set.

Accordingly, the court lacks jurisdiction to consider the Lackey claim and the court only considers the merits of petitioner's Eighth Amendment claim based on his age and infirmities.

II.

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Section 2254(d) of the Act sets forth the standard for granting habeas corpus relief when the claim was adjudicated on the merits in state court:

8

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Only the former requirement is relevant here.

In Williams v. Taylor, 529 U.S. 362, 409-10 (2000), the Supreme Court clarified the meaning of "contrary to" and "unreasonable application of" clearly established Federal law, as determined by the Supreme Court, holding that a federal court must *objectively* determine whether the state court's decision of federal law was erroneous or incorrect. The Court reiterated the views expressed in Williams in Bell v. Cone, 535 U.S. 685, 694 (2002) and held that (1) under the "contrary to" clause of Section 2254(d)(1), a federal habeas court may issue the writ if the state court applies a rule different from the governing law set forth in Supreme Court cases or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts; and (2) under the "unreasonable application" clause of Section 2254(d)(1), the court may grant relief if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the case. The court held that under this latter clause the application must be objectively

unreasonable, which is different from incorrect.

In this case, the above standard is modified because the "state court reach[ed] a decision on the merits but provide[d] no reasoning to support its conclusion." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). In that situation, the court "independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law . . . [but] still defer[s] to the state court's ultimate decision." Id.; see also, Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (stating that independent review is not the equivalent of *de novo* review, rather review is undertaken through the "'objectively reasonable' lens" of Williams).

Applying these standards, petitioner cannot prevail because there is no "clearly established" United States Supreme Court law which renders petitioner's execution, at his advanced age and with his current physical infirmities, a violation of the cruel and unusual punishment clause of the Eighth Amendment. Indeed, to the extent the Supreme Court has found that the Eighth Amendment limits the death penalty, those limitations have related to reduced mental culpability or capacity. Specifically, in holding that the Eighth Amendment prohibited the execution of juveniles, the Supreme Court enumerated three differences between juveniles and adults: juveniles are (1) immature, with impulsive judgment; (2) they have a greater vulnerability to negative influences; and (3) they have relatively more transitory personality traits. Roper v. Simmons, 125 S.Ct. 1183, 1195 (2005). Clearly, none of these differences apply to a mature adult like petitioner who committed multiple murders with cold-

blooded calculation at age fifty.

Similar to Roper, in holding that the Eighth Amendment precluded execution of the mentally retarded, the Court emphasized the disparity of the "relative culpability of mentally retarded offenders, and the relationship between mental retardation and the penological purposes served by the death penalty." Atkins v. Virginia, 536 U.S. 304, 319 (2002). Likewise, in Ford v. Wainwright, 477 U.S. 399, 421 (1986) (Powell, J., conc.), finding the execution of the mentally incompetent unconstitutional under the Eighth Amendment, the Court held "that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." Also, in Enmund v. Florida, 458 U.S. 782, 801 (1982), the Court based its decision, finding the execution of those who aided a felony but did not kill or intend to kill unconstitutional under the Eighth Amendment, on the personal culpability of the accomplice: "criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt."

To the contrary, petitioner's argument, here, that it is a violation of the Eighth Amendment to execute a seventy-six year old man suffering from serious physical infirmities, does not involve culpability. Nothing about his advanced age or his physical infirmities (chronic heart disease, diabetes, legal blindness, and inability to ambulate), affected his culpability at the time he committed the capital offenses. There is no evidence now that he does not understand the gravity and meaning

of his imminent execution.  Furthermore, petitioner's argument that his execution serves none of the penological purposes of capital punishment is without merit.  Petitioner's current condition is irrelevant to the fulfillment of those purposes.  Indeed, sparing his life, according to the Ninth Circuit, would undermine the primary penological purpose:

> [The] evidence of Allen's guilt is overwhelming.  Given the nature of his crimes, sentencing him to another life term would achieve none of the traditional purposes underlying punishment.  Allen continues to pose a threat to society, indeed to those very persons who testified against him in the Fran's Market triple-murder trial here at issue, and has proven that he is beyond rehabilitation.  He has shown himself more than capable of arranging murders from behind bars.  If the death penalty is to serve any purpose at all, it is to prevent the very sort of murderous conduct for which Allen was convicted.

Allen v. Woodford, 395 F.3d 979, 1019 (9th Cir. 2005.)

     This court is bound by Supreme Court precedent.  At bottom, what petitioner requests herein is that this court find Supreme Court precedent where there is none, by holding that "evolving standards of decency" call for a revision of the constitutional standards to recognize the inhumanity of executing the elderly and infirm.  See Trop v. Dulles, 356 U.S. 86, 101 (1958) (the Eighth Amendment "must draw its meaning from the evolving standards of decency that the mark the progress of a maturing society").  The debilitating infirmities of an old man who murdered remorselessly in his middle age is sobering and pitiable and, perhaps, deserving of executive mercy.  This court, however, under the AEDPA, is not at liberty to redefine the constitutional standards unless articulated by the Supreme Court.  As such, the court likewise cannot find that the state court's refusal to do

so was unreasonable or contrary to law.

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. Good cause appearing, petitioner's January 12, 2006 motion for leave to proceed informa pauperis is granted.

2. Good cause appearing, petitioner's January 12, 2006 application for appointment of counsel is granted. Michael Satris, SBN 67413, P.O. Box 337, Bolinas, California 94924, shall represent petitioner pursuant to 21 U.S.C. § 848(q).

3. Petitioner's January 12, 2006 application for a writ of habeas corpus is denied on the merits with respect to petitioner's claim that his age and physical infirmity render his execution a violation of the Eighth Amendment. This court lacks jurisdiction to consider petitioner's other claim that his execution after his tenure on death row amounts to an Eighth Amendment violation because he has not sought permission from the Court of Appeals to file that claim here. 28 U.S.C. § 2244(b)(3)(A).

4. Because this court finds no merit to petitioner's claim that his age and physical infirmity render his execution a violation of the Eighth Amendment, petitioner's request for a stay of execution is denied. Vargas v. Lambert, 159 F.3d 1161, 1165-66 (9th Cir. 1998)(quoting Barefoot v. Estelle, 463 U.S. 880, 895 (1963)("The granting of a stay should reflect the presence of substantial grounds upon which relief might be granted.")). For the same reasons, the court finds petitioner has not made a "substantial showing of the denial of a constitutional right" for the issuance of a certificate of

appealability.  28 U.S.C. § 2253(c).

DATED: January 12, 2006

                                        /s/ Frank C. Damrell Jr.
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE